# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | | |
|---|---|---|
| **LARRY WAYNE WEBB,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:14-cv-01548** |
| | ) | |
| **MIKE PARRIS, Warden,** | ) | **Chief Judge Sharp** |
| | ) | |
| **Respondent.** | ) | |

## MEMORANDUM OPINION

Petitioner Larry Wayne Webb, a state prisoner incarcerated at the Northwest Correctional Complex in Tiptonville, Tennessee, filed a *pro se* petition under 28 U.S.C. § 2254 for the writ of habeas corpus. (ECF No. 1.) The respondent filed an answer in opposition to the petition (ECF No. 13), along with a complete copy of the underlying state-court record. The petitioner then filed a reply brief (ECF No. 16), along with a motion to alter or amend (ECF No. 17) and a memorandum of supplemental authority (ECF No. 18). The habeas petition is ripe for review, and this Court has jurisdiction. 28 U.S.C. § 2241(d).

The Court will grant the motion to alter or amend, in which the petitioner seeks to amend his habeas petition to assert that the procedural default of any claims of ineffective assistance of trial counsel raised in his petition should be excused by the ineffective assistance of post-conviction counsel, pursuant to *Martinez v. Ryan*, 566 U.S. ----, 132 S. Ct. 1309, 1320 (2012), and *Sutton v. Carpenter*, 745 F.3d 787, 792 (6th Cir. 2014). Nonetheless, upon consideration of the entire record, the Court finds that the petitioner is not entitled to relief on the grounds asserted. Mr. Webb's habeas petition will be denied and this matter dismissed.

## I. PROCEDURAL BACKGROUND

On April 12, 2010, the petitioner was found guilty by a Davidson County jury of one count of identity theft and one count of forgery in an amount over $1,000. He was sentenced as a career offender to the mandatory minimum and maximum of twelve years' incarceration on each count, but the trial court ordered that the sentences be served concurrently. (Judgments, ECF No. 14-1, at 30–31.) The convictions and sentences were affirmed on direct appeal. *State v. Webb* ("*Webb I*"), No. M2010-02547-

CCA-R3-CD (Tenn. Ct. Crim. App. March 7, 2012), *perm. app. denied* (Tenn. Aug. 15, 2012). On October 5, 2012, the petitioner, through counsel, filed a petition for post-conviction relief in the state trial court. (ECF No. 14-13, at 24–36.) He also filed a "Pre-Hearing Memorandum" in support of his petition for post-conviction relief (ECF No. 14-13, at 37–44) and a "Supplemental Claim" (ECF No. 14-13, at 46–47). After conducting a hearing at which the petitioner and his trial attorney testified, the trial court entered an order denying the petition. (ECF No. 14-13, at 51–68.) That decision was affirmed as well. *Webb v. State* ("*Webb II*"), No. M2013-00444-CCA-R3-PC, 2013 WL 6844107 (Tenn. Ct. Crim. App. Dec. 26, 2013), *pet. rehear den.* (Jan. 16, 2014), *perm. app. denied* (Tenn. June 25, 2014).

Webb filed his § 2254 petition in this Court on July 28, 2014. The respondent concedes that the petition is timely.

## II.    STATEMENT OF FACTS

The Tennessee Court of Criminal Appeals summarized the testimony presented during trial as follows:

> This case arises from the Defendant signing the victim's signature on their jointly owned Corvette's title and selling the car without sharing the proceeds of the sale with the victim. Based on this conduct, a Davidson County grand jury indicted the Defendant for forgery in an amount over $1000 and identity theft. At the trial on the Defendant's charges, the parties presented the following evidence: Penny Holt, the victim, testified that the Defendant had been her fiancé. The victim testified that, during their relationship, she and the Defendant jointly owned a house and a 1977 Stingray Corvette, and they shared in the expenses for the Corvette. Holt stated that she paid for the car insurance on the Corvette. The victim said that she drove the Corvette "[a]ll the time." The victim identified the original Tennessee certificate of title for the Corvette and her name on the title. The victim testified that, since receiving the original Tennessee certificate of title, she had kept the title in a safe deposit box.

> In June or July 2008, the victim and the Defendant broke off their engagement. Later that year, in early December, the victim had work done to her Chevrolet Lumina automobile. While her Lumina was in the repair shop, the victim went to retrieve the Corvette to drive and found it missing. The Defendant told the victim that he was having the brakes on the Corvette repaired in Goodlettsville. The victim testified that, because she and the Defendant were on "good terms" despite the break-up, she had no reason to doubt his explanation as to the location of the Corvette.

> The victim identified a copy of the Tennessee certificate of title for the Corvette, which displayed her signature as "Penny Holt" transferring the title. The victim denied that the signature was hers and explained that, because there is another person named Penny Holt in Nashville, whenever the victim signs a document she signs her name "Penny H. Holt." The victim identified the signature as the Defendant's handwriting. The victim testified that she never gave anyone permission to sign the certificate of title on her behalf and that the Defendant never requested her permission to sell the Corvette. The victim said that she did not receive any money from the proceeds of this sale of the Corvette.

On cross-examination, the victim testified that she was not present when the Defendant purchased the Corvette, and that she did not contribute any money toward the purchase of the Corvette. Originally, the Corvette certificate of title was registered in Georgia. When the Defendant applied for a Tennessee certificate of title for the Corvette, he added the victim's name to the certificate of title. The victim identified her signature on the back of the Georgia certificate of title for the Corvette and the Defendant's handwriting where he wrote her name as one of the owners.

The victim agreed that she signed an affidavit when they registered the Corvette in Tennessee verifying that she and the Defendant were married. The victim explained that, even though they were not actually married yet, they were engaged, living together, and planned to be married soon, so she signed the affidavit in order to obtain the license tag for the Corvette.

The victim testified that, when she learned the Defendant had "given a car to the attorney," she sought an arrest warrant for the Defendant based upon forgery. The victim agreed that she had not seen the copy of the Tennessee certificate of title the Defendant used to transfer the vehicle at that time, but she knew that she possessed the original title and had not signed any document to transfer or sell the Corvette. The victim agreed that the Defendant asked her for the Tennessee certificate of title "a couple of times" but that she never gave it to him. The victim agreed that, after she had sought a criminal warrant, the Corvette was sold, and the victim received "some" of the proceeds from that second sale.

The victim identified documents containing the Defendant's handwriting and signature and documents containing the victim's handwriting and signature.

Jeremy Gourley testified that he was an attorney and that the Defendant was a former client. Gourley said that the retainer fee for him to represent the Defendant was $4000, and the Defendant paid this sum by transferring title of a 1977 Corvette to Gourley. Gourley recalled that the certificate of title the Defendant gave him had two signatures transferring the title. Gourley identified the copy of the certificate of title and said that the signatures were on the Tennessee certificate of title when he received it, so he did not witness anyone signing the certificate of title. Gourley explained the fee arrangement as follows:

> We had a retainer agreement where [the Defendant] was to pay me cash money. Instead of paying me cash money, he brought the car for me to hold for a period of days until he could come up with cash money and after a period of days the cash money did not appear. It wasn't paid on cash money. I was just given the car and the car title.

Gourley testified that the Defendant gave him the Tennessee certificate of title early in December 2008. Gourley said that, pursuant to an agreement with the victim, he sold the Corvette in July 2009 for $5500. Gourley split the proceeds of the sale, after any expenses he incurred, with the victim.

On cross-examination, Gourley agreed that, at the point he received the Corvette, he anticipated he would be paid in cash and that he would not keep the Corvette.

Ann Watkins, a Department of Revenue Supervisor, testified that the Department of Revenue is responsible for all duties related to vehicle title and registration. Watkins said that on December 5, 2008, the Defendant requested a duplicate certificate of title for the Corvette and provided "the original was lost" as the reason for his request. Watkins explained that when a duplicate certificate of title is issued, the word "duplicate" is printed on the certificate of title and the date of issuance reflects the date the duplicate was

issued. Watkins identified the duplicate certificate of title issued to the Defendant on December 5, 2008.

Based upon this evidence, the jury convicted the Defendant of forgery in an amount over $1000 and identity theft.

*Webb I*, 2012 Tenn. Crim. App. LEXIS 164, at *2–7.

At the sentencing hearing, the trial court made the following statement:

I, I understand kind of what Mr. Webb is saying to be honest with you about it. What he is basically saying is that he is not denying that all through his life at least his adult life he has done one thing after another that was criminal in terms of thefts and forgeries and any other thing like that, you know. He does not deny that.

What has got him so upset I think having heard this case and this case here of all of the cases that he has ever had was probably the most unusual way that he ends up going before a jury and gets convicted under all of the circumstances. It was, I won't use the word bizarre but it was unusual really when you have got a situation where this Corvette that apparently he and Ms. Holt sort of had a joint interest in ends up being the source of his potentially most serious conviction in terms of the sentence that he would get on all of these different other things that he has been involved in, which he does not deny.

It was unusual that Mr. Gourley came in and testified and ended up saying to the jury and the jury heard it all that he got part of his fee out of splitting the money with Ms. Holt over this Corvette and it is just the whole thing was a little bit unusual.

So, I am not saying that, that this man is without some problem all through his life and I am not saying that the jury did not give fair consideration and under the law and under the circumstance return their verdict, but it is a case that has some unusual circumstances leading up to how he ended up getting charged, tried and convicted by a jury, so I am going to look at it all and I will be fair to everyone in here and I don't know, but what is always best is in the eye of the beholder sometimes, but I heard the case and it was a little different without any doubt.

(Sentencing Hr'g Tr., ECF No. 14-4, at 48–49.)

The court subsequently entered a sentencing order that specifically took note of the petitioner's statement that he was "unable to tell his side of the story to the jury because his testimony could have been cross-examined by the State using his excessive criminal history of fraudulent offenses, thereby prejudicing him before the jury." (Sentencing Order 3, ECF No. 14-1, at 25.) The court, however, found that it had no discretion to mitigate the petitioner's sentence from the twelve-year statutory minimum for a Class D felony under Range III. Although the state argued strenuously for consecutive sentencing based on the petitioner's criminal history, the court ordered that the sentences be served concurrently, based in large part upon the petitioner's testimony at the sentencing hearing and the court's recognition of the unusual circumstances presented by this case. (*Id.* at 28–29.)

After the conviction became final, the petitioner sought post-conviction relief. The Tennessee Court of Criminal Appeals summarized the testimony and evidence presented at the post-conviction hearing as follows:

> At the post-conviction hearing, Jennifer Heaster, the Petitioner's sister, testified that she lived in Ridgetop, Tennessee, in April 2010 when the Petitioner's trial occurred. She said that no one contacted her or subpoenaed her but that if she had been called as a trial witness, she would have been available. She said the Petitioner bought the Corvette between April and June 2005. She said he brought the Corvette and a truck to her house in September 2005 to park the vehicles on her six-acre property for safekeeping.
>
> Ms. Heaster testified that the Corvette remained at her house until the Petitioner wrecked his truck in January 2006. She said that the Petitioner returned the Corvette to her property in June or July 2006 and that it remained there until the Petitioner and Penny Holt purchased a house with a garage in June 2007. She said Ms. Holt and the Petitioner were dating but did not know how long they had been dating. She said that to her knowledge, Ms. Holt never had "anything to do" with or any ownership interest in the Corvette before June 2007. She said Ms. Holt never came to her house to borrow the Corvette. She identified photographs of the truck with body damage and the Corvette. She said a photograph of the Corvette with a Georgia license plate was taken at her house on November 1, 2005.
>
> On cross-examination, Ms. Heaster testified that she was unaware of the Petitioner's trial or anyone trying to take the Petitioner's car. She said she first heard about the post-conviction case when an investigator contacted her. She said the Corvette never returned to her property after June 2007, nor had she seen the Petitioner or Ms. Holt driving it after June 2007. She was unaware Ms. Holt claimed to have an ownership interest in the car.
>
> Trial counsel testified that he represented the Petitioner in general sessions court and at the trial. He said that after hearing some of the trial testimony, he contacted a friend at the Department of Safety or the court clerk's office and had documents faxed because he did not have the documents with him. He thought one of the documents, a title application submitted by Ms. Holt, was used as a trial exhibit. He identified faxed documents reflecting that they were faxed on "4-12 at 10:03." He said that before receiving the fax, he had not seen Ms. Holt's affidavit stating that she was married to the Petitioner. He knew the Petitioner and Ms. Holt were never married but did not know about the document. He could not recall Ms. Holt's exact words but said she testified that she signed the affidavit in order to have the car titled jointly to the Petitioner and her. He said the title was issued in their names on July 12, 2007.
>
> Counsel testified that due to his receiving the affidavit at 10:00 a.m. on the day of the trial, he was unable to research whether Ms. Holt should have received a title for the car. He said he did not know before the trial that an issue existed regarding whether Ms. Holt and the Petitioner were married. He acknowledged he did not make a pretrial motion to exclude the document or object when it was admitted into evidence showing Ms. Holt's ownership of the car. He agreed he did not have time to understand the document's importance and said he was familiar with the statute stating that a title should not be issued based upon fraudulent information. He said that he knew once he received the document Ms. Holt made a false statement and that he "tried to make as much hay about that as possible." He agreed he did not request a continuance after receiving the information.

Counsel testified that he did not talk to Frank Harris before the trial. He recalled that the Petitioner may have called Mr. Harris on the day of the trial to see if Mr. Harris could attend the trial but was unsure if he spoke with Mr. Harris. He said he knew the Petitioner was the only person involved in purchasing the car. He said that the car was purchased in another state and that the previous title reflected that Ms. Holt added her name on a different date in different handwriting. He said the Petitioner stated that Mr. Harris could testify that Ms. Holt was not involved in purchasing the car. He acknowledged that although Mr. Harris was an important witness, he did not subpoena Mr. Harris. He understood that Mr. Harris was going to appear voluntarily for the trial but that Mr. Harris had a health issue that prevented him from attending. He acknowledged he did not request a continuance in order for Mr. Harris to be present.

Counsel testified that he did not think he spoke with Ms. Heaster before the trial. He said that he may have met her at his office but that they never discussed the car's ownership. He said that although a "serious time lapse" existed between the Petitioner's purchase of the car and Ms. Holt's involvement, he was unable to demonstrate it at the trial. He said that although the Petitioner did not testify at the trial, the Petitioner told him that the Petitioner had the car for over a year before he began dating Ms. Holt.

Counsel testified that the Petitioner always maintained that he did not sign Ms. Holt's name to a duplicate title. He said that the Petitioner claimed he left the title at Ms. Holt's business for her to sign because she was not there and that when he returned the next day, her name was signed. He said the Petitioner assumed Ms. Holt signed the document. He agreed he did not consult a handwriting expert to examine the signature, although the State's theory was that the Petitioner signed Ms. Holt's name to the document. He agreed Ms. Holt stated in cross-examination that she knew the Petitioner signed her name on the document. He did not think any proof contradicted Ms. Holt's testimony in this regard and said the Petitioner did not testify because of his prior criminal record. He said Ms. Holt testified that she never signed her name without her middle initial, H. He agreed that the signature on the title did not include a middle initial.

Counsel testified that the Petitioner came to his office multiple times on Sundays. Counsel said he was in court Monday through Friday, did not work on Saturday, and had client appointments on Sundays. He said that he also saw clients on Sundays who dropped by without an appointment and that he stayed until everyone had been seen. He said the Petitioner was familiar with his office protocol. He thought he and the Petitioner met the week before the trial but said the Petitioner did not have an appointment on the Sunday before the trial. He thought that the Petitioner came to his office on the Sunday before the trial but that for some reason, they did not meet. He said other people may have been waiting. He acknowledged providing post-conviction counsel with a computer disk of his file and said it did not contain any notes to show that he reviewed the defense with the Petitioner. He acknowledged he did not make a motion for judgment of acquittal based upon the statute regarding titles not being issued based upon fraudulent statements.

On cross-examination, counsel testified that he represented the Petitioner in other cases, as well. He said one of the other cases involved Mr. Harris and one was a domestic matter. He agreed the Petitioner was on bond and was able to meet with him at his office. He could not estimate the number of hours he spent with the Petitioner discussing the cases. He said that the Petitioner was very concerned about his legal matters and that he never stopped the Petitioner from coming to his office. He said that the Petitioner obtained new counsel at some point and that he did not represent the Petitioner through the conclusion of the other cases.

Counsel testified that he was unsure whether he received Ms. Holt's affidavit in a supplemental discovery response but said it was possible. He identified a supplemental

discovery response containing Department of Revenue documents. He said the discovery response listed his address and had a certificate of service dated August 11, 2009. He identified Ms. Holt's affidavit as one of the Department of Revenue documents. He agreed the trial was about eight months after August 11, 2009. He agreed that he initially wanted to use the affidavit to show Ms. Holt was dishonest. He agreed he cross-examined Ms. Holt about this and argued it in his closing argument. He agreed a Department of Revenue official testified that the title Ms. Holt kept in her safe deposit box was a valid Tennessee title despite the false statement in the affidavit. He said that in his opinion, the title was valid.

Counsel testified that Ms. Holt admitted on cross-examination that she was not involved in the purchase of the car and that she did not provide any money for the purchase or for a one-half ownership interest. He agreed that no one disputed at the trial that the Petitioner was the purchaser. He did not think the Petitioner and Ms. Holt knew each other when the Petitioner bought the car. He believed Ms. Holt testified that she did not know who wrote her name on the Georgia title.

Counsel testified that forgery could consist of actions other than writing someone else's name on a document. He agreed that if the Petitioner had someone else write Ms. Holt's name on the title and then used the title as if the signature were valid, forgery existed.

Counsel testified that at the trial, Ms. Holt denied the signature on the title was hers or that she gave anyone permission to sign her name. He said she stated she had the original title and would not have signed a duplicate title. He said that Ms. Holt's testimony seemed inconsistent about whether the Petitioner signed her name or if she did not know who signed it and that he "kept on pushing the point" in cross-examination. He said the State's argument was that although the Petitioner may not have written Ms. Holt's name, he knew she had not signed her name when he used the document.

Counsel testified that the Petitioner, a career offender, faced up to twenty-four years if he received two consecutive twelve-year sentences for his Class D felony convictions. He noted, though, that the prosecutor was under the impression the Defendant was convicted of a Class D felony and a Class E felony, which had a possible effective sentence of eighteen years. He said the trial court did not impose consecutive sentences. He said he argued for probation specifically and alternative sentencing generally. He said he did not specifically request community corrections or split confinement.

On redirect examination, counsel acknowledged that he did not cross-examine Ms. Holt about a signature she identified as hers in which she had not signed her middle initial. On recross-examination, he agreed the State presented several of Ms. Holt's signatures on checks and documents for the jury's use in comparing to the signature on the title.

The parties stipulated that Jane Eakes, the Petitioner's handwriting expert, would testify that the Petitioner did not write Ms. Holt's signature on the title. The affidavit of Frank Harris was received by stipulation. The affidavit stated that Mr. Harris had a pre-existing business relationship with the Petitioner before selling a Corvette to him. Mr. Harris stated that he would have been available to testify at the Petitioner's trial if he had been called. He said, though, the Petitioner's attorney never contacted him about the circumstances of the Corvette transaction or inquired whether he would be available to testify at the trial. Mr. Harris said he never received a subpoena for the trial. He stated that had he been called to testify, he would have said that the Petitioner purchased the Corvette in 2005 for $13,500, which he paid in installments over a couple of months. Mr. Harris stated that he hand-delivered the Georgia title to the Petitioner. He said he had no

knowledge that the Petitioner dated Ms. Holt at the time the Petitioner bought the Corvette. Mr. Harris stated that although he testified for the State at the Petitioner's sentencing hearing, the testimony concerned a business dispute in which he sought criminal charges against the Petitioner and that he had since determined that the Petitioner did nothing wrong. He said the Petitioner's conviction related to the other business matter was reversed. Counsel's file regarding the Petitioner's conviction proceedings was received as an exhibit.

*Webb II*, 2013 WL 6844107, at *1–5

## III.    ISSUES PRESENTED FOR REVIEW

Mr. Webb makes the following claims in his habeas petition:

(1) That the trial court violated his rights under the Fifth and Fourteenth Amendments to the United States Constitution by admitting into evidence at his state criminal trial the 2007 Tennessee Certificate of Title that was obtained by fraud;

(2) That the trial court violated the petitioner's Fifth And Fourteenth Amendment rights to due process by violating the "Clean Hands Doctrine";

(3) That the petitioner was denied the effective assistance of counsel, as guaranteed by the Sixth Amendment, insofar as his trial counsel failed to:

> (a) review discovery materials prior to trial ;
>
> (b) prepare an adequate defense;
>
> (c) interview and call witnesses Harris and Heaster to testify on his behalf;
>
> (d) call a handwriting expert as a defense witness.
>
> (e) call Sarah Griffith as a witness;
>
> (f) "present available or readily discoverable evidence regarding Mr. Webb's innocen[ce]";
>
> (g) file a motion to invoke the "Clean Hands Doctrine";
>
> (h) call as a defense witness the owner of Community Garage in Nashville; and
>
> (i) investigate or inquire about Metro Police Department's process for issuing warrants.

In addition, Mr. Webb asserts that the ineffective assistance of post-conviction counsel should excuse the procedural default of any of his claims of ineffective assistance of trial counsel.

## IV.    STANDARD OF REVIEW

### A.    Exhaustion and Procedural Default

A federal district court will not entertain a petition for the writ of habeas corpus unless the

petitioner has first exhausted all available state-court remedies for each claim in his petition. 28 U.S.C. § 2254(b)(1). While exhaustion is not a jurisdictional requirement, it is a strictly enforced doctrine designed to promote comity between the states and the federal government by giving the state an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Consequently, as a condition precedent to seeking federal habeas corpus relief, the petitioner is required to fairly present his claims to every available level of the state court system. *Rose v. Lundy*, 455 U.S. 509, 518–20 (1982); *see also Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) ("[A] federal habeas petitioner . . . [must] provide the state courts with a 'fair opportunity' to apply controlling legal principles to the facts bearing upon his constitutional claim."). Moreover, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Once a petitioner's federal claims have been raised in the highest state court available,[1] the exhaustion requirement is satisfied, even if that court refused to consider the claims. *Manning v. Alexander*, 912 F.2d 878, 883 (6th Cir. 1990).

A habeas petitioner bears the burden of demonstrating that he has properly and fully exhausted his available state court remedies with respect to the claims he presents for federal habeas review. *Prather v. Rees*, 822 F.2d 1418, 1420 n.3 (6th Cir. 1987) (citation omitted). Moreover, if a habeas petitioner retains the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(c). Ordinarily, habeas petitions containing unexhausted claims are dismissed without prejudice in order to permit the petitioner the opportunity to pursue them in state court. *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002) (citing *Rose*, 455 U.S. at 518, 520–22); *see also Rhines v. Weber*, 544 U.S. 269 (2005) (reconfirming the continued relevance of *Rose* under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")).

If, however, an unexhausted claim would be procedurally barred under state law, for instance by a statute of limitations or a state rule barring successive petitions, then the claim is deemed exhausted (because no further state review is available) but procedurally defaulted (because it was not presented to

---

[1] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

a state court for review), and may not be considered by the federal court on habeas review except under extraordinary circumstances. *Alley v. Bell*, 307 F.3d 380, 385–86 (6th Cir. 2002) (citations omitted); *In re Cook*, 215 F.3d 606, 607–08 (6th Cir. 2000). Specifically, in order to obtain consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors, or alternatively that failure to consider the claims will result in a "fundamental miscarriage of justice." *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 311 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)).

B.      **Fully Exhausted Claims**

Even when a petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254 raises claims that have been properly exhausted in the state courts, this Court's review of the state court's resolution of those issues remains quite limited. First, this Court may "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Thus, a claim asserting only a violation of state law, even if fully exhausted, is not cognizable in federal habeas corpus. *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

Further, under § 2254(d),

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* In other words, a federal court is bound by the state court's adjudication of the petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of Supreme Court precedent, or was based on an unreasonable factual determination. *Lopez v. Smith*, No. 13-946, 574 U.S. ----, *slip op.* at 1 (Oct. 6, 2014) ("We have emphasized, time and again, that [AEDPA] prohibits the federal courts of appeals from relying on their own precedent to conclude that a particular constitutional principle is 'clearly established.'"). Further, this Court must presume the correctness of state-court factual determinations, and the petitioner has the burden of rebutting that presumption by

clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous."), *abrogated on other grounds by Thompson v. Keohane*, 516 U.S. 99, 111 (1995).

With these principles in mind, the Court will turn to the examination of the claims raised in Mr. Webb's petition for habeas relief.

## V.      DISCUSSION

### A.      Claim 1: Admitting into Evidence the 2007 Certificate of Title

In this Court, Mr. Webb argues that the state's introduction of the fraudulently obtained certificate of title into evidence at trial violated his right to due process as protected by the Fifth and Fourteenth Amendments to the United States Constitution. In his direct appeal, Mr. Webb asserted that admitting into evidence the 2007 Tennessee Certificate of Title reflecting Penny Holt as one of the owners of the Corvette, once it became clear that Ms. Holt only obtained that title by fraudulently representing that she was married to Mr. Webb, "was in violation of the Tennessee Rules of Evidence [403 and 901] as well as the Defendant's rights to Due Process as guaranteed by the 5th and 14th Amendments to the United States Constitution and Article One, Section Eight of the Tennessee Constitution." (Def.'s Dir. App. Br. at 16, ECF No. 14-8, at 21.)

But the petitioner also acknowledged in his appellate brief that, because no objection was made to the admission of the title at trial, the issue was subject to plain-error review. Under plain-error review, the petitioner argued, the admission of the fraudulent evidence constituted a clear violation of Rules 403 and 901 of the Tennessee Rules of Evidence, and, as a result, also violated his rights to a fair trial and due process of law as guaranteed by the Fifth and Fourteenth Amendments. In other words, the petitioner did not raise a free-standing argument that admission of the fraudulently obtained 2007 certificate of title violated his constitutional rights. Rather, the alleged constitutional violation was identified simply as one element of the petitioner's argument for why he should be able to obtain review of a claim that was otherwise waived.

Nor did the appellate court consider the claim as raising a discrete federal constitutional issue. In considering this claim, the Tennessee Court of Criminal Appeals agreed that, because Mr. Webb's trial counsel had failed to raise a contemporaneous objection to the evidence during the trial, the appellate

court's review of the argument was limited to plain-error review under Tennessee Rule of Appellate Procedure 36(b). Under Tennessee law, an appellate court may grant relief under Rule 36(b) only when:

> (1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake.

*State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010) (citing *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000). As the court noted in *Webb I*, "[i]f any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Webb I*, 2012 Tenn. Crim. App. LEXIS 164, at *16.

In conducting the plain-error review of this claim, the state court concluded that admission of the 2007 certificate of title did not violate either Rule 403 (which generally provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury") or Rule 901 (pertaining to authentication of evidence) of the Tennessee Rules of Evidence. Because the court found no "breach of a clear and unequivocal rule of law," one of the five necessary factors for relief under Rule 36(b), the court denied relief without considering the other factors, including whether the purported error violated a "substantial right" of the petitioner.

As set forth above, "the doctrine of exhaustion requires that a claim be presented to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). In reviewing the state-court proceedings to determine whether a petitioner has "fairly presented" a claim to the state courts, courts are to examine the petitioner's claims in state court for:

> (1) reliance upon federal cases employing constitutional analysis;
>
> (2) reliance upon state cases employing federal constitutional analysis;
>
> (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or
>
> (4) alleging facts well within the mainstream of constitutional law.

*Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005) (paragraph breaks inserted). The Sixth Circuit has stated: "While a petitioner need not cite 'chapter and verse' of constitutional law, 'general allegations of

the denial of rights to a "fair trial" and "due process" do not "fairly present claims" that specific constitutional rights were violated.'" *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006) (quoting *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)). Where the petitioner's argument in the state court contains only a passing or vague reference to an alleged violation of the petitioner's federal constitutional rights, and fails to cite to any federal or state cases incorporating a federal constitutional analysis to support his claim, the Sixth Circuit has concluded the petitioner did not fully and fairly present this issued to the state courts as a matter of federal constitutional law. *See, e.g.*, *Slaughter*, 450 F.3d at 236.

In this case, the petitioner's claim regarding admission of the title was framed as a state-law issue in the state appeal, with only passing reference to a "substantial right." The petitioner did not cite to any federal case law, or to any state cases employing an analysis of federal constitutional protections. This Court therefore concludes that the claim was not properly exhausted in the state courts. More precisely, because the claim was not fully and fairly presented to the state courts, and a state-court remedy is no longer available under Tennessee law, *see* Tenn. Code Ann. §§ 40-30-102(a) (establishing one-year statute of limitations) and -102(c) (establishing a one-petition rule), the claim is technically exhausted but procedurally barred. *Coleman v. Thompson*, 501 U.S. 722, 729–30, 752–53 (1991); *Wong*, 142 F.3d at 321–22.

As set forth above, to overcome a procedural default barring review of a claim, a petitioner must show cause for the default and actual prejudice that resulted from the alleged violation of federal law, or, alternatively, show that there will be a fundamental miscarriage of justice if the claim is not considered. *Coleman*, 501 U.S. at 750. "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

The petitioner here does not acknowledge the default, much less present cause or prejudice sufficient to overcome the default. He does, however, appear to be arguing that he is actually innocent of the crimes of which he was convicted. Specifically, he continues to argue, as he did in the state court, that the 2007 title was not "authentic" because it was procured by fraud, and that he cannot be guilty of conveying the title to a vehicle that actually belonged to him. Notwithstanding, a claim of actual innocence

requires a showing of "new reliable evidence" showing factual innocence, not mere legal insufficiency. *Schlup v. Delo*, 513 U.S. 298, 324 (1995). *See also Carter v. Mitchell*, 443 F.3d 517, 538 (6th Cir. 2006) (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998), for the proposition that "actual innocence means factual innocence, not mere legal insufficiency" (internal quotation marks omitted)). The "new reliable evidence," "whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence," must consist of evidence that was not presented at trial. *House v. Bell*, 547 U.S. 518, 537 (2006).

Mr. Webb's dispute with the state court's application and use of the term "authenticate," which depart from his understanding of the term, is a purely legal dispute, and he has not presented any *new* evidence of actual innocence. Instead, he contests the legal sufficiency of the evidence used to convict him of forgery and identity theft. Because he does not have new evidence of factual innocence, he cannot overcome the procedural default of this claim.

Finally, even if the Court were to address the petitioner's claim on its merits, it would find the claim lacking. Mr. Webb has not cited to a Supreme Court decision, nor is this Court aware of one, holding that admission into evidence of a document that is deemed admissible under state law may nonetheless violate a criminal defendant's due-process rights. Even when a state evidentiary ruling is demonstrably erroneous under state law, such error rarely justifies granting federal habeas relief. This is because "it is not the province of a federal habeas court to re-examine state-court determination on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 63 (1991) (citation omitted). Thus, granting habeas relief on the basis of a state evidentiary ruling would be justified only when a ruling based on a state evidentiary ruling was so egregiously wrong that it "by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 72. The petitioner has made no such showing here, and he is not entitled to relief on the basis of this claim.

**B.      Claim 2: Violation of the "Clean Hands Doctrine"**

The petitioner argues that the trial court violated his Fifth and Fourteenth Amendment rights to due process by violating the "Clean Hands Doctrine." (ECF No. 1, at 19.) He argues, in essence, that because Ms. Holt obtained the certificate of title to the Corvette by submitting an affidavit in which she fraudulently represented that she and the petitioner were married, she had "unclean hands" and therefore

that the state should not have permitted her to profit from her own crime by pressing charges against Mr. Webb for forgery and identity theft.

This argument was presented for the first time in the petitioner's Rule 11 application for permission to appeal the denial of his post-conviction petition to the Tennessee Supreme Court.[2] Even there, however, it was presented as a claim of ineffective assistance of trial counsel: "Whether Trial Counsel's Ineffective Representation in this Case Allowed the Clean Hands Doctrine to Be Violated to the Detriment of the Defendant in Violation of the Due Process Clause of the 5th and 14th Amendments to the United States Constitution." (Rule 11 Application at 5, ECF No. 14-19, at 8.)

In other words, the unclean-hands claim was *never* raised as a substantive claim during the petitioner's trial proceedings or direct appeal; it was only raised as the basis for a claim of ineffective assistance of trial counsel. Because the petitioner no longer has the ability under state law to present the substantive claim in the state courts, *see* Tenn. Code Ann. §§ 40-30-102(a) (one-year statute of limitations) and -102(c) (one-petition rule), the claim is deemed exhausted but procedurally defaulted. The petitioner has not established cause or prejudice to overcome the procedural default nor, as discussed above, does he have new evidence to support a claim of actual innocence that would permit this Court to consider the defaulted claim. The claim is therefore barred from review, and the petitioner is not entitled to relief on the basis of this claim.

### C. Claim 3: Ineffective Assistance of Counsel

#### 1. The Exhausted Claims

The petitioner raises numerous claims of ineffective assistance of counsel in this Court, only a few of which were fully exhausted in the state courts. The plaintiff fully exhausted his claims that trial counsel was constitutionally ineffective for failing to:

(a) review discovery materials prior to trial ;

(b) prepare an adequate defense;

(c) interview and call witnesses Harris and Heaster to testify on his behalf; and

---

[2] The post-conviction Rule 11 application states that the issue was first raised in Webb's "petition to rehear" (ECF No. 14-19, at 13), and the petitioner likewise states that the issue was first raised "in his petition to rehear to the CCA" (Habeas Petition, ECF No. 1, at 19). The record before this Court does not include any motion to the Tennessee Court of Criminal Appeals to rehear either the direct appeal or the post-conviction appeal. This omission is not material, however, because an issue raised for the first time in a petition to rehear in the Tennessee Court of Criminal Appeals is still procedurally defaulted.

(d) call a handwriting expert as a defense witness.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that, in order to successfully claim that a lawyer's assistance was so ineffective as to violate the Sixth Amendment, a defendant must meet two requirements. "First, the defendant must show that counsel's performance was deficient." *Strickland*, 466 U.S. at 687. "Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* As discussed above, however, federal habeas relief may not be granted under 28 U.S.C. § 2254 unless the petitioner shows that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of the United States Supreme Court, § 2254(d)(1); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); that it "involved an unreasonable application of" such law, § 2254(d)(1); or that it "was based on an unreasonable determination of the facts" in light of the record before the state court, § 2254(d)(2).

Thus, typically, when a claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is *not* whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. ----, 131 S. Ct. 770, 785 (2011). As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 131 S. Ct. at 786 (internal quotation marks and citation omitted).

In addressing the petitioner's claims for ineffective assistance of counsel in this case, the Tennessee Court of Criminal Appeals first articulated the standard for proving ineffective assistance of counsel, as established by the Supreme Court in *Strickland. See Webb II*, 2013 WL 6844107, at *5–6. The court then addressed the petitioner's claims and concluded that he had failed to prove ineffective assistance of counsel in violation of the Sixth Amendment. The question before this Court is whether, as to each claim, the Tennessee court's application of *Strickland* was unreasonable.

### (a) Failure to Review Discovery Materials Prior to Trial

In his post-conviction appeal, the petitioner argued that he was "prejudiced by his trial counsel's failure to review discovery which left him unprepared to present the multiple defenses available to Mr. Webb stemming from Ms. Holt's own fraud." (Post-Conviction App. Br. at 13, ECF No. 14-16, at 16.) More specifically, he argued that the counsel was not prepared to argue that the title was fraudulently obtained and therefore should not have been issued under Tenn. Code Ann. § 55-3-112. He makes the same claim here.

The trial court denied relief, finding that counsel was ineffective for failing to review discovery prior to trial but that the petitioner did not suffer actual prejudice as a result of that failure. The appellate court agreed:

> The record supports the trial court's determination that counsel's performance was deficient for failing to review the certificate of title when it was provided in discovery. Regarding the issue of prejudice, the Petitioner argues, "The fact that Holt's fraud should have prevented the title from issuing would have provided further support for the argument that Mr. Webb possessed a good faith belief that it was his car and his conveyance of it to a third party came with no criminal intent toward Ms. Holt." As a component of plain error review of the trial court's admission of the Tennessee certificate of title, this court noted in the appeal of the convictions that the false statement in Ms. Holt's affidavit did not invalidate her ownership interest in the car. The certificate of title was admissible evidence to show the Petitioner's guilt of the offenses.
>
> As this court likewise noted in the previous appeal, legal ownership was not an element of forgery or identity theft. Relative to forgery, the issue was whether the Petitioner altered, made, completed, executed, or authenticated a writing as the act of another person without the person's authorization. See T.C.A. § 39-14-114(b) (2010). Relative to identity theft, the issue was whether the Petitioner knowingly obtained, possessed, bought, or used Ms. Holt's personal identifying information "[w]ith the intent to commit any unlawful act including, but not limited to, obtaining or attempting to obtain credit, goods, services, or medical information" in Ms. Holt's name without her consent or the authority to obtain, possess, buy, or use her identifying information. *Id.* § 39-14-150(b) (2010) (amended 2011). We note that the Petitioner was not charged with theft of property. Proof that the Petitioner had a mistaken belief that he was the sole owner would have been unavailing. Because the Petitioner's proposed defense would not have provided a valid basis for avoiding criminal liability, he has not shown that he was prejudiced by counsel's deficient performance.

*Webb II*, 2013 WL 6844107, at *7–8 (some internal citations omitted).

In other words, the state court concluded that the petitioner was not prejudiced by his counsel's ineffective conduct because the fraudulent affidavit did not negate the evidence in the record that Ms. Holt had an ownership interest in the car regardless of whether she and Mr. Webb were married. The petitioner did not dispute the fact that Ms. Holt's name was written on the Georgia certificate of title.

Moreover, proof establishing that the petitioner (mistakenly) believed himself to be the sole owner of the Corvette would not have negated the proof of forgery or identity theft, and the petitioner was not charged with theft of property.

As set forth above, the state court correctly articulated the *Strickland* standard for evaluating claims of ineffective assistance of counsel, and its conclusion that counsel's performance was deficient but that Mr. Webb was not prejudiced thereby did not amount to an unreasonable application of the law to the facts. The petitioner is not entitled to relief on the basis of this claim.

### (b) Failure to Prepare an Adequate Defense

The petitioner also argued in his post-conviction appeal, as he does in this Court, that his counsel failed to prepare adequately for trial, specifically because he did not review pretrial discovery, was unaware of the fraudulent affidavit until trial, and therefore failed to file a pretrial motion to exclude the 2007 certificate of title from evidence or to object to introduction of the title during trial. The state appellate court again concluded that the record supported the trial court's determination that trial counsel's performance was deficient insofar as he failed to review discovery materials prior to trial and therefore failed to discover the fraudulent affidavit, but that the record also supported the trial court's determination that the petitioner was not prejudiced:

> Regarding prejudice, we have considered the Petitioner's argument that had counsel been prepared, he could have filed a motion to suppress or a motion *in limine* to exclude the Tennessee certificate of title on the basis that in accord with Tennessee Code Annotated section 55-3-112 (2012), it never should have been issued. Section 55-3-112(1) provides, in part, that the Department of Safety "shall refuse to issue a title . . . [if the] application contains any false or fraudulent statement[.]" As we noted in section II above and in the Petitioner's previous appeal, the false affidavit did not invalidate Ms. Holt's ownership interest in the car or the validity of the Tennessee certificate of title. The Petitioner has not identified a basis upon which the certificate of title might have been suppressed or excluded.
>
> We have considered the Petitioner's argument that even if the certificate of title was admissible, counsel's deficient performance kept him from presenting a defense. He argues that if the jury had known Ms. Holt never should have received the Tennessee certificate of title, there is a reasonable probability they would have believed he had no intent to harm her or commit an unlawful act. The relevant questions of intent, though, related to the Petitioner's intent in obtaining a duplicate certificate of title by falsely stating that the original was lost and his intent in providing the duplicate certificate containing a signature that purported to be Ms. Holt's in exchange for legal services. Even if the Petitioner were able to demonstrate that the title was erroneously issued, he would still have to contend with Ms. Holt's testimony that they co-owned the car and the evidence he wrote Ms. Holt's name as an owner on the Georgia certificate of title. The trial court did not err in concluding that there was no reasonable probability the result of the trial would have been different if counsel had prepared adequately for the trial and that the

Petitioner failed to establish prejudice from counsel's deficient trial preparation.

*Webb II*, 2013 WL 6844107, at *9.

In sum, the court concluded that the certificate of title was admissible under state law to prove one or more elements of the crimes with which the petitioner was charged and, therefore, that he was not prejudiced by his counsel's failure to file a motion *in limine* to exclude the certificate of title from evidence. The state court's application of the *Strickland* standard was clearly reasonable. The petitioner is not entitled to relief on the basis of this claim.

### (c) Failure to Conduct Adequate Pretrial Investigation and Call Witnesses

The petitioner asserts that he was prejudiced by his trial counsel's failure to investigate and call witnesses who would have provided a defense. Specifically, the petitioner argues that the testimony of Frank Harris and Jennifer Heaster would have greatly assisted his defense.

He raised this claim in his state post-conviction proceedings. As discussed above, Jennifer Heaster testified at the post-conviction hearing that she was the petitioner's sister and would have been available to testify at the trial, but that she was not contacted by defense counsel or subpoenaed to testify. She would have testified that the Corvette was stored at her house for a significant period of time prior to the petitioner's involvement with Penny Holt and that Ms. Holt was not involved in the purchase of the vehicle. The petitioner introduced the affidavit of Frank Harris at the post-conviction hearing, in which Mr. Harris stated under oath that he would have been available to testify at trial if he had been called to do so. Mr. Harris could have testified about having known and been in business with the petitioner for many years and that the petitioner purchased the Corvette from him in Georgia in 2005 for $13,500 paid in installments over the course of several months.

The trial court found this claim to be without merit. The appellate court concurred, stating:

> The record reflects that counsel did not investigate Ms. Heaster or Mr. Harris. As the Petitioner argues, their testimony could have been used to show that Ms. Holt did not have any involvement in the purchase of the Corvette in 2005. Ms. Holt admitted as much in her cross-examination at the trial. We note, as well, that the trial evidence established the car was titled jointly to Ms. Holt and the Petitioner in 2007. The Petitioner was aware Ms. Holt's name appeared on the title before he attempted the title transfer that gave rise to his convictions. Whether Ms. Holt originally had an ownership interest in the car and whether her name was later added to the title was not disputed. Although the trial court did not specifically address whether counsel's performance was deficient, we conclude that the Petitioner failed to show deficient performance by clear and convincing evidence. Regarding prejudice, the record supports the court's conclusion that failure to investigate Mr. Harris and Ms. Heaster and present their testimony about the Petitioner's sole

responsibility for purchasing the Corvette did not prejudice the Petitioner.

*Webb II*, 2013 WL 6844107, at *6.

The state court properly applied controlling law and reasonably concluded that the petitioner failed to establish that his counsel was ineffective or that he was prejudiced by counsel's alleged failure to investigate these witnesses or present their testimony. The petitioner is not entitled to relief on the basis of this claim.

### (d) Failure to Call Handwriting Expert as Defense Witness

The petitioner argues that his trial counsel was ineffective for failing to engage or consult with a handwriting expert. He presented this claim in his post-conviction proceedings. The parties stipulated at the post-conviction hearing that handwriting expert Jane Eakes had concluded that the petitioner was not the person who signed Penny Holt's name on the duplicate car title. The petitioner argues that this evidence would have been important because the state, even though it stated during closing arguments that it did not have to prove that Mr. Webb actually signed Ms. Holt's name to prove forgery, it nonetheless went to great lengths during the trial to trial to establish just that. The state trial court rejecting this claim, concluding that, even if a handwriting expert had testified at trial that the petitioner did not sign Ms. Holt's name, "the jury still could have convicted the petitioner based on the theory that the petitioner knew someone else had signed Ms. Holt's name" and that "the State argued both theories to the jury at trial." *Webb II*, 2013 WL 6844107, at *9.

The appellate court agreed:

> Although the Petitioner offered expert proof at the post-conviction hearing that Ms. Holt's signature was not his handwriting, his culpability did not hinge solely on whether he signed Ms. Holt's name. Forgery may be committed by altering, making, completing, executing or authenticating a writing. See T.C.A. § 39-14-114. We have reviewed the record of the conviction proceedings, and it reflects that the jury was fully instructed on the means by which forgery could be committed. Ms. Holt testified at the trial that she did not sign the duplicate certificate of title or give the Petitioner permission to sell the Corvette. The State offered proof that months after he gave the Corvette and the title to his attorney to pay his attorney's fees, the Petitioner told Ms. Holt that the car was being repaired in another city. The trial court did not err in concluding that counsel's performance was not deficient and that the Petitioner did not show prejudice due to the lack of a handwriting expert.

*Id.* at *10.

The record fully supports the appellate court's factual findings. (*See, e.g.*, State's Closing Argument, ECF No. 14-2, at 100:24–101:20 (arguing, in pertinent part, that a person commits forgery who

passes off a document as authentic when he knows it was forged by someone else); Jury Charge, ECF No. 14-2, at 121:24–122:5 (defining forgery to include "authenticat[ing] any writing so that it purports to be the act of another who did not authorize that act").) The court's application of the *Strickland* standard was not unreasonable. Again, the petitioner is not entitled to relief on the basis of this claim.

### 2. *The Unexhausted Claims*

The following claims, raised in the petition before this Court, were not fully exhausted in the petitioner's state post-conviction proceedings:

(a) that counsel erred in failing to call Sarah Griffith as a witness;

(b) that counsel failed to "present available or readily discoverable evidence regarding Mr. Webb's innocen[ce]" (ECF No. 1, at 41);

(c) that counsel failed to call as a defense witness the owner of Community Garage in Nashville;

(d) that counsel failed to investigate or inquire about Metro Police Department's process for issuing warrants; and

(e) that counsel was ineffective for failing to invoke the "Clean Hands Doctrine" as a defense at trial.

As noted above, a petitioner must fairly present his claims for review at every level of the state court system. *O'Sullivan v. Boeckel*, 526 U.S. 838, 845–47 (1999); *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275–77 (1971). Failure to present a claim to the state court at the appropriate opportunity will ultimately mean that the claim is procedurally defaulted.

In order to obtain habeas consideration of a claim that is procedurally defaulted, a petitioner must demonstrate both "cause" for the procedural default and actual prejudice resulting from the alleged constitutional errors. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Until recently, a prisoner could not demonstrate cause by claiming that he had received ineffective assistance of counsel during state post-conviction proceedings. In *Martinez v. Ryan*, 566 U.S. ----, 132 S. Ct. 1309, 1320 (2012), the

Supreme Court held that the ineffective assistance of post-conviction counsel can establish "cause" to excuse the procedural default of a defendant's substantial claim of ineffective assistance at trial under certain circumstances. In *Trevino v. Thaler*, 569 U.S. ----, 133 S. Ct. 1911 (2013), the Supreme Court extended *Martinez* to apply to cases where a state's "procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Id.* at 1921. In *Sutton v. Carpenter*, 745 F.3d 787 (6th Cir. 2014), the Sixth Circuit held that, under *Martinez* and *Trevino*, "ineffective assistance of post-conviction counsel can establish cause to excuse a Tennessee defendant's procedural default of a substantial claim of ineffective assistance at trial." *Id.* at 795–96 (citations omitted).

The *Martinez* exception nonetheless remains quite narrow. First, it requires that the ineffective assistance of post-conviction counsel occur during the "initial-review collateral proceeding" and therefore does not "concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings." *Martinez*, 132 S. Ct. at 1320. Thus, any claims that were defaulted as a result of post-conviction *appellate* counsel's failure to brief these issues to the Tennessee Court of Criminal Appeals are not saved by *Martinez*.

Moreover, when a petitioner raises a *Martinez* claim, the petitioner must establish that the underlying ineffective-assistance claims are "substantial . . . , which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318–19. In addition, *Martinez* did not dispense with the "actual prejudice" prong of the standard for overcoming procedural default first articulated by the Supreme Court in *Coleman v. Thompson*, 501 U.S. at 750. To establish that his claim is "substantial," a habeas petitioner must "show that his post-conviction relief counsel was ineffective under *Strickland v. Washington*." *Clabourne v. Ryan*, 745 F.3d 362, 376 (9th Cir. 2014). That is, the petitioner must show both that his post-conviction counsel's performance was constitutionally deficient and that the petitioner was prejudiced by the deficiency. *Clabourne*, 745 F.3d at 376. Prejudice, under *Strickland*, requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the [post-conviction] proceeding would have been different." *Strickland*, 466 U.S. at 694.

The *Clabourne* court recognized some "overlap" between the two prejudice requirements:

Within the "cause" prong there is an element of "prejudice" that must be established: to show ineffective assistance of post-conviction relief counsel, a petitioner must establish a

reasonable probability that the result of the post-conviction proceeding would have been different. The reasonable probability that the result of the post-conviction proceedings would have been different, absent deficient performance by post-conviction counsel, is necessarily connected to the strength of the argument that trial counsel's assistance was ineffective. The prejudice at issue is prejudice at the post-conviction relief level, but if the claim of ineffective assistance of trial counsel is implausible, then there could not be a reasonable probability that the result of post-conviction proceedings would have been different.

*Clabourne*, 745 F.3d at 377-78.

In other words, in many habeas cases seeking to overcome procedural default under *Martinez*, it will be more efficient for the reviewing court to consider in the first instance whether the alleged underlying ineffective assistance of counsel was "substantial" enough to satisfy the "actual prejudice" prong of *Coleman.* If not, because the "cause and prejudice" standard is conjunctive rather than disjunctive, the reviewing court would have no need to consider whether the petitioner has established cause to overcome the procedural default, in the form of ineffective assistance of post-conviction counsel.

Webb asserts that any defaulted claims were defaulted as a result of the ineffective assistance of his post-conviction counsel. As discussed below, this Court nonetheless concludes that the defaulted claims are not sufficiently substantial to overcome the procedural default bar.

### (a) Failure to Call Sarah Griffith as a Witness

Sarah Griffith was the Tennessee Department of Safety employee who notarized Penny Holt's affidavit that contained the fraudulent representation that Ms. Holt and Mr. Webb were married. The petitioner insists that Ms. Griffith would have been an important witness who could have been examined regarding her thought process as she permitted Ms. Holt to present the affidavit that included the words "no fraud intended" next to her signature. According to Mr. Webb, this ambiguous language obviously changed the intent of the Georgia title by changing the wording from "Larry Webb or Penny Holt" (as it appeared on the Georgia title) to "Larry Webb and Penny Holt" (the language that appeared on the Tennessee title obtained by Ms. Holt). (*See* Habeas Petition, ECF No. 1, at 29–30.)

This claim is not substantial because the petitioner cannot show that he was prejudiced by his trial attorney's failure to call Sarah Griffith as a witness or, for that matter, counsel's failure to make an issue of the distinction between "or" on the original Georgia title and "and" on the 2007 Tennessee title. The state court construed the Georgia title (to which Mr. Webb or someone had added "or Penny Holt") as evidence of Mr. Webb's intent to share ownership in the vehicle with Ms. Holt. As the Tennessee Court

of Criminal Appeals stated: "[T]he trial evidence established the car was titled jointly to Ms. Holt and the Petitioner in 2007. The Petitioner was aware Ms. Holt's name appeared on the title before he attempted the title transfer that gave rise to his convictions. . . . [N]otwithstanding Ms. Holt's misrepresentation, the Defendant's intent to share ownership in the Corvette with Ms. Holt was shown by his writing her name on a Georgia certificate of title and that lawful ownership was not an element of the charged offenses." *Webb II*, 2013 WL 6844107, at *6, *7.

In other words, as discussed above, the state court reasonably concluded that the fact that Ms. Holt obtained the 2007 certificate of title by fraudulently stating that she and Webb were married did not have any relevance to the charges on which Mr. Webb was convicted. Thus, examination of the individual who issued the 2007 title would not have elicited any relevant evidence. Because the petitioner cannot establish that his trial counsel was ineffective for failing to call Sarah Griffith as a witness or that he was prejudiced by that failure, the underlying ineffective-assistance claim is not sufficiently "substantial" under *Martinez*, 132 S. Ct. at 1318–19, to overcome the procedural default of the claim.

### (b) Failure to Present Evidence of Innocence

In support of this claim, the petitioner states only as follows:

[T]rial counsel failed to present available or readily discoverable evidence regarding Mr. Webb's innocen[ce], which was either available to trial counsel or readily discoverable through even minimal investigation, provides [sic] substantial support to each of the claims contained in the initial state proceedings that revolve around Mr. Webb's innocen[ce]. Importantly too, this information would have made a difference. Thus trial counsels failures in this regard prejudiced the outcome of Mr. Webb's trial proceedings. Had he conducted a reasonable investigation into these and other facts, and had he presented evidence in support of these claims. The Court would have been duty-bound to grant relief under applicable state and Federal law.

(ECF No. 1, at 41–42.) The petitioner, however, does not identify what evidence of innocence was available or readily discoverable. Conclusory allegations with no accompanying evidentiary support are insufficient to warrant habeas relief. *Malcolm v. Burt*, 276 F. Supp. 2d 664, 685 (E.D. Mich. 2003). "A petition for a writ of habeas corpus must set forth facts that give rise to a cause of action under federal law or it may summarily be dismissed." *Edwards v. Johns*, 450 F. Supp. 2d 755, 756 (E.D. Mich. 2006). Because the petitioner has utterly failed to set forth any facts to support his conclusory allegations of ineffective assistance of counsel based on the alleged failure to present evidence of his innocence, this claim is without substance.

### (c) Failure to Call Owner of Community Garage as a Witness

The petitioner insists that the owner of Community Garage could have testified that, after Webb and Holt ended their relationship, Mr. Webb spend $2400 on repairs to the Corvette. He insists that this evidence would have established that Mr. Webb considered the vehicle to be his. Of course, a jury might have drawn that inference, but not necessarily. Regardless, the questions of Mr. Webb's intent and his belief that the vehicle was solely his were beside the point. As the Tennessee Court of Criminal Appeals recognized, "[t]he relevant questions of intent . . . related to the Petitioner's intent in obtaining a duplicate certificate of title by falsely stating that the original was lost and his intent in providing the duplicate certificate containing a signature that purported to be Ms. Holt's in exchange for legal services." *Webb II*, 2013 WL 6844107, at *9. The petitioner cannot establish that introduction of this evidence would have had any effect on the outcome of his criminal case.

### (d) Failure to Investigate Metro Police Department's Process for Issuing Warrants.

Mr. Webb insists that it was very unusual for Metro Police to have a warrant issued for his arrest solely on Ms. Holt's word, without sending out an investigator, and that the jury should have heard how unusual it was and that the only reason it happened in his case was that the night court commissioner was a friend of Penny Holt's. Again, this ancillary issue would have had no bearing on the facts that were relevant to the jury's determination and is not substantial.

### (e) Failure to Invoke the "Clean Hands Doctrine" as a Defense

Post-conviction counsel did not present this issue in the initial-review post-conviction proceedings, and in fact presented it for the first time in his Rule 11 application for permission to appeal to the Tennessee Supreme Court. Because it was not raised at every available level of review, the claim was procedurally defaulted. Because it was not raised in the initial-review post-conviction proceedings, the Court finds that *Martinez* applies but, again, that the claim is not substantial.

Under Tennessee law, the doctrine of unclean hands states that "[h]e who comes into Equity must come with clean hands." *Emmit v. Emmit*, 174 S.W.3d 248, 252 (Tenn. Ct. App. 2005) (quoting *Heylandt Sales Co. v. Welding Gas Products Co.*, 175 S.W.2d 557, 561 (Tenn. 1943)). The doctrine "enables a court to prevent a party from profiting from her own misconduct." *Id.* (citing *McCallie v. McCallie*, 719 S.W.2d 150, 154 (Tenn. Ct. App. 1986)). It has no apparent application in the context of a

criminal trial where the state has control over whether to prosecute a person for illegal behavior, and counsel was not ineffective for failing to posit this defense.

Moreover, the state courts were clearly aware of Ms. Holt's fraud in representing that she was married to Mr. Webb in order to obtain the 2007 Tennessee title, and aware of the fact that she eventually obtained a portion of the proceeds from the Corvette when it was later resold. The state courts nonetheless concluded that Ms. Holt's fraud in holding herself out as married to Mr. Webb was not inconsistent with Mr. Webb's expressed intent to share ownership of the Corvette, demonstrated by the fact that Mr. Webb added Ms. Holt's name to the original Georgia title (a fact he does not dispute). Moreover, the courts apparently concluded that the fraudulently obtained affidavit did not excuse Mr. Webb's later conduct. If Mr. Webb believed that breaking off the engagement with Ms. Holt should also have terminated any interest she had in the Corvette, Mr. Webb had other means of divesting Ms. Holt of such ownership interest than lying to obtain a duplicate title and then presenting the duplicate title bearing Ms. Holt's forged signature to a third party.

Because Mr. Webb cannot show that the doctrine of unclean hands had any bearing on his case, the underlying ineffective-assistance claim is not substantial, and he cannot overcome the procedural default.

VI.    **CONCLUSION**

The Court understands Mr. Webb's frustration and agrees with the trial court that the circumstances of his conviction were unusual. But that is not the question before this Court. The sole questions before this Court are whether the state court decisions unreasonably applied federal constitutional law in upholding the conviction and whether the defaulted ineffective-assistance claims are sufficiently substantial that the ineffective assistance of post-conviction counsel may operate as cause to overcome the default. For the reasons set forth herein, the Court finds that the state convictions and effective twelve-year sentence did not violate federal law, however disproportionate and wasteful they may seem under the specific circumstances of this case, and that *Martinez* does not permit review of the defaulted claims. Larry Wayne Webb's petition under § 2254 will therefore be denied and this matter dismissed with prejudice.

Federal Rule of Appellate Procedure 22 provides that an appeal of the denial of a habeas petition

may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing § 2254 Cases requires that a district court issue or deny a COA when it enters a final order. A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). The district court must either issue a COA indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b).

In this case, the petitioner has not made a substantial showing of the denial of a constitutional right. Grounds one and two were procedurally defaulted. The procedurally defaulted claims of ineffective assistance of counsel are not sufficiently substantial to permit the alleged ineffective assistance of post-conviction counsel to overcome the procedural default, and the fully exhausted ineffective-assistance claims are without merit. Because an appeal by the petitioner on any of the issues raised in this petition would not merit further attention, the Court will deny a COA. The petitioner may, however, seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate order is filed herewith.

_____
KEVIN H. SHARP
CHIEF JUDGE
UNITED STATES DISTRICT COURT